IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


CHARLES D. MORSE                                           PLAINTIFF

v.                     CIVIL NO. 2:16-CV-2091

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                             DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Charles D. Morse, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits under the provision of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff protectively filed his current application for DIB on September 4, 2013, alleging an inability to work since July 29, 2012, due to diabetes, scoliosis of spine, high blood pressure, and neuropathy of feet. (Doc. 11, pp. 68-69). For DIB purposes, Plaintiff maintained

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

insured status through December 31, 2017. (Doc. 11, p. 203). An administrative hearing was held on July 8, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 11, pp. 44-67).

By written decision dated December 24, 2014, the ALJ found that during the relevant time period, Plaintiff had severe impairments of diabetes mellitus, hypertension, and obesity. (Doc. 11, p. 32). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 11, pp. 34-35). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform medium work as defined in 20 CFR § 404.1567(c), except that Plaintiff could only frequently climb, balance, crawl, kneel, stoop, and crouch. (Doc. 11, pp. 35-39). With the help of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing past relevant work as an appliance assembler as it is actually and generally performed. (Doc. 11, p. 39).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 4, 2016. (Doc. 11, pp. 5-8, 26). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ erred in finding that Plaintiff's shoulder and leg pain were not severe impairments; 3) the ALJ erred in his RFC determination; and 4) the ALJ erred in finding that Plaintiff could perform his past relevant work. (Doc. 11). [2]

#### A. Full and Fair Development of the Record:

Plaintiff argues that the ALJ erred in failing to fully develop the record by failing to order a consultative orthopedic examination along with a medical source statement outlining Plaintiff's specific physical limitations as requested by Plaintiff's counsel. (Doc. 12, p. 3). The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of

---

[2] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of case analyses and psychiatric review techniques completed by non-examining medical consultants, a General Physical Examination form completed by an examining physician, and Plaintiff's medical records, which included clinic notes from treating physicians and imaging results. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B. Severe Impairments:

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's shoulder and leg pain were medically determinable and met severity. At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The

claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

As for Plaintiff's neuropathy, medical records showed that on December 3, 2013, Dr. Sean Baker at Mercy Hospital in Fort Smith prescribed Plaintiff Gabapentin for his neuropathy, to be taken three times per day. (Doc. 11, p. 445). On March 11, 2014, Plaintiff reported to Dr. Baker that he was having pain in his feet late afternoon and early evening. (Doc. 11, p. 447). However, Dr. Baker's notes reveal that Plaintiff was not taking the medication as often as prescribed. (Doc. 11, p. 447). See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (Plaintiff's failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits). Furthermore, at the July 8, 2014, hearing before the ALJ, Plaintiff testified that several days per week in the late afternoon and early evening, when Plaintiff was not taking his second daily dose of the Gabapentin, he would experience pain in his legs and feet. (Doc. 11, p. 54). See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted) (an impairment which can be controlled by treatment or medication is not considered disabling).

As for Plaintiff's right shoulder pain, Plaintiff was in an accident in 2001, injuring his right shoulder. (Doc. 11, pp. 34, 55). Plaintiff testified that he still had pain in his right shoulder from the injury and that the pain impacted his sleep. (Doc. 11, p. 55-56). Hearing testimony showed, however, that Plaintiff continued to work until 2012. (Doc. 11, p. 51). Moreover, the last thirteen years of his employment, Plaintiff worked as a machine operator, which according to the hearing testimony by the Vocational Expert, was medium level work. (Doc. 11, pp. 51, 63). In his application for benefits, Plaintiff alleged that he was unable to work due to diabetes, scoliosis of spine, high blood pressure, and neuropathy of feet. Plaintiff did not include right

shoulder pain or injury in his application. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (The fact that she did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed).

Furthermore, while the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at Step Two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 404.1545(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 404.1523(c) (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). Based on a review of the record, the Court finds the ALJ did not err in setting forth Plaintiff's severe impairments.

### C. Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence

fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A Function Report completed by Marsha Peevy on Plaintiff's behalf, dated September 24, 2013, revealed that Plaintiff's conditions had impacted his daily life. (Doc. 11, p. 175). However, Ms. Peevy reported that he had no problems with personal care; prepared his own meals daily; and did household chores, including vacuuming, dishes, and laundry. (Doc. 11, pp. 175-176). The Report also stated that Plaintiff would go outside daily, could drive a car, go out alone, shop in stores for food, pay bills, count change, handle a savings account, and could use a checkbook or money order. (Doc. 11, p. 177). Ms. Peevy reported that Plaintiff enjoyed deer hunting, fishing, and movies, and stated that he did those things as often as he could, but noted that he was no longer able to endure them for an entire day after he became ill. (Doc. 11, p. 178). Ms. Peevy reported that Plaintiff visited his mother three times a week and his grown children twice a week. (Doc. 11, p. 178).

This level of activity belies Plaintiff's complaints of pain and limitation, and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities—making breakfast, washing dishes and clothes, visiting friends, watching television and driving—were inconsistent with claim of total disability).

With regard to Plaintiff's physical impairments, the record revealed that Plaintiff was treated conservatively for hypertension, diabetes, neuropathy, GERD, hyperlipidemia, chronic renal insufficiency – mild, stage two, back pain, bradycardia, and short periods of coughing, acute bronchitis, insomnia, dizziness, and fatigue. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).

Based on the medical records, Plaintiff also appeared to experience relief for his diabetes, hypertension, GERD, and neuropathy with medication. The Court notes, an impairment which can be controlled by treatment or medication is not considered disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted). In 2012, 2013 and 2014, Dr. Baker's notes consistently showed that Plaintiff's type II or unspecified diabetes was "without mention of complication" and "not stated at uncontrolled." (Doc. 11, pp. 329, 332, 335, 339, 445, 448, 455). As for his hypertension, Plaintiff testified that when he took his medication, he was able to keep his blood pressure under control. (Doc. 11, p. 54). Dr. Baker indicated on February 9, 2012, that Plaintiff's GERD was "doing well." (Doc. 11, p. 359). On March 22, 2014, during a visit to Dr. Baker, his notes indicated that Plaintiff was not taking his neuropathy medication as prescribed, which was causing an increase in his neuropathy symptoms. (Doc. 11, p. 447). Dr. Baker also noted on September 15, 2015, that Plaintiff's neuropathy had improved with adjustments to his medication. (Doc. 11, p. 14).

Furthermore, the medical records repeatedly revealed that Plaintiff was non-compliant with his medications. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001) (claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain). Specifically, Dr. Baker noted on October 6, 2015, that Plaintiff

was taking only one Metformin daily, rather than the two that were prescribed. (Doc. 11, p. 19). On that same day, Dr. Baker's notes reflect that Plaintiff was had stopped his Omeprazole for his GERD, and his symptoms were worse. (Doc. 11, p. 19). On December 3, 2013, Dr. Baker noted that Plaintiff was still drinking alcohol, despite recommendations to avoid it, was only occasionally checking his blood sugar, and continued to have a poor diet. (Doc. 11, p. 444). On May 28, 2013, Dr. Baker's clinical notes revealed that Plaintiff was not testing his blood sugar regularly. (Doc. 11, p. 334). In November and December of 2012, medical records also indicated Plaintiff was not taking his blood pressure medication. (Doc. 11, pp. 328, 358). Moreover, Plaintiff was repeatedly counseled regarding a healthy lifestyle, including cutting calories, losing weight, increasing exercise, and avoiding alcohol. (Doc. 11, pp. 14, 20, 344, 354, 356, 358, 368, 426, 428).

Lastly, upon discrediting Plaintiff's allegation that he is disabled, the ALJ further considered that Plaintiff performed medium level work for at least eleven years with his alleged disabling conditions. At the July 8, 2014 hearing before the ALJ, Plaintiff testified that he worked for Whirlpool for twenty-eight and one-half years, and his employment ceased in 2012 when the company experienced a period of lay-offs. (Doc. 11, pp. 51, 60). Hearing testimony revealed that Plaintiff's 2001 shoulder injury and his scoliosis, diagnosed when he was a teenager, were both conditions that had occurred many years prior and were ongoing during his employment at Whirlpool. "Working generally demonstrates an ability to perform a substantial gainful activity." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)).

Moreover, after the separation from Whirlpool, Plaintiff was able to attend truck-driving school, which lasted for several weeks; obtain his commercial driver's license; and

apply for jobs. (Doc. 11, pp. 57, 60). The medical record showed that on September 20, 2012, Plaintiff visited Mercy Medical Clinic and requested a letter from Stefanie Ellis, APN, stating that he was medically cleared to "perform duties of a DOT truck driver." (Doc. 11, p. 316). In August of 2013, Plaintiff shared with Dr. Baker that he was trying to find work. (Doc. 11, p. 339). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)).

Plaintiff also testified that he received unemployment benefits for more than a year after he was laid off from Whirlpool. While the receipt of these benefits is not conclusive, applying for unemployment benefits adversely affects credibility because an unemployment applicant "must hold himself out as available, willing and able to work." Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014).

While it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity prior to the expiration of his insured status. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D. The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

In the present case, when determining that Plaintiff could perform medium work with limitations, the ALJ considered the relevant medical records, the medical opinions from treating, examining, and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In his argument, Plaintiff points to an August 6, 2014, General Physical Examination performed by Dr. Clifford Lamar Evans, where he opined that Plaintiff had mild/moderate limitation of 20% weakness in right arm and back, and neuropathy in his lower legs and feet. (Doc. 11, p. 463). The ALJ discussed the consultative examination and noted that Dr. Evans also reported that Plaintiff had a normal range of motion throughout his extremities and his cervical and lumbar spine with the only exception being a slightly decreased range of motion in his right shoulder (130/150). (Doc. 11, p. 36). The ALJ also noted that Dr. Evans' report showed that Plaintiff demonstrated no muscle spasms, no muscle atrophy, negative straight-leg raising tests, no sensory abnormalities, a normal gait, only a slight reduction in strength in his right arm (20%), and that Plaintiff was able to perform all requested limb function tests. (Doc. 11, p. 36). Further, Dr. Evans interpreted the x-rays of Plaintiff's back to reveal scoliosis, but opined that this would cause only mild to moderate limitations in his ability to lift and/or carry, as would the weakness in his right arm. (Doc. 11, p. 36). In sum, the ALJ gave Dr. Evans' opinion substantial weight except for his conclusion that Plaintiff had limitations as a result of the neuropathy in his feet. (Doc. 11, p. 38). The ALJ noted that Dr. Evans' opinion regarding the neuropathy was without any objective evidence upon which to base the restriction. (Doc. 11, p. 38).

The ALJ also discussed the non-examining medical consultants' physical assessments and gave them little to no weight due to the fact that their opinions failed to adequately assess the combined effects of Plaintiff's complaints and the fact that additional evidence was entered into the record after those opinions were rendered. (Doc. 11, p. 38). However, the ALJ gave substantial weight to the Psychiatric Review Techniques performed by the non-examining medical consultants because those opinions were consistent with the situational nature of

13

Plaintiff's mental stressors and due to the fact that Plaintiff voluntarily chose to cease his medication prescribed to addressed the alleged condition. (Doc. 11, p. 38-39). See Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (The ALJ has the responsibility to determine which findings are inconsistent and which opinions should be given greater weight than other opinions.).

The ALJ also discussed the fact that an RFC of medium work with limitations was supported by the fact that Plaintiff could control his conditions with prescribed medication and that the fact that Plaintiff admits to being able to regularly perform activities of daily living, despite his alleged impairments. However, in consideration of Plaintiff's alleged back and shoulder pain, the ALJ limited the RFC to work where Plaintiff was only frequently required to climb, balance, crawl, kneel, stoop, and crouch. (Doc. 11, pp. 37-38).

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform medium work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### E. Past Relevant Work

Plaintiff has the initial burden of proving that he suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes

performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990) (expressly approving the two part test from S.S.R. 82-61).

Here, the ALJ specifically found that Plaintiff could return to his past relevant work as an appliance assembler. (Doc. 11, p. 39). In doing so, the ALJ relied upon the testimony of the Vocational Expert, who after reviewing the ALJ's proposed hypothetical question, which included the limitations addressed in the RFC determination discussed above, opined that the hypothetical individual would be able to perform Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform his past relevant work as an appliance assembler, as he generally performed it and as that job is generally performed.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 6th day of June, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE